Case 24-1289 Hoffmann Bros. Heating & Air v. Hoffmann Air & Heating May it please the Court. Good morning, Your Honors. Angela Kennedy for Plaintiff or Appellant Hoffmann Bros. Heating & Air Conditioning et al. As you know, we've raised four issues on appeal. I'm mindful of my time today, so subject to questions from the Court, I'm going to focus on the first two points that we've raised related to trademark. These issues relate to rulings below that misled the jury and strike at the heart of trademark law's purpose, which is protecting consumers from confusion and safeguarding fair competition. Turning first to the contractual consent defense, contrary to the arguments in defendant's briefs, plaintiff's trademark and unfair competition claims were never based only on the fact that defendants used Hoffmann in their company name. Rather, plaintiff's claim was based on the totality of the circumstances related to defendants' use of the mark, and how consumers would have encountered the mark in the marketplace, including defendants' use of pay-per-click ads that specifically targeted Hoffmann Bros., the use of a confusing website URL, and company materials like stickers and invoices that appeared confusingly similar to Hoffmann Bros. materials. Despite this totality of the circumstances framework, defendants were permitted to submit a contractual consent defense based on the settlement agreement between Hoffmann Bros. and Tom Hoffman, who I'll refer to as Tom just because there are several Hoffmans in this case. When Tom left the company in 2011, that agreement restricted Tom from using Hoffman in the name of an HVAC company for four years. Upon the expiration of four years, the implication is that he can use the name Hoffman, but it would be unreasonable and contrary to contract interpretation principles to take that implication any further. The issue before this court is not whether the settlement agreement could be interpreted to allow defendants to use Hoffman after four years. Rather, the legal issue presented to the district court and to this court is whether the expiration of that restriction automatically gave defendants an affirmative right to infringe on Hoffman Bros. marks and meant Hoffman Bros. waived all protections under trademark and unfair competition law as to how he used the term Hoffman. Isn't that a straw man though? And I'll tell you why. I think the question is whether there's ambiguity, whether either interpretation is reasonable. And reading it, probably Hoffman Bros. has the slightly better interpretation, but I can see where the other side, and I've got to admit to you, the first time I looked at the provision, I thought, oh, this is a permission to do it after four years. And then I thought about it as a lawyer, not as an ordinary person, but as a lawyer, and thought, OK, maybe Hoffman Bros. has the better interpretation. And so, I don't know, it just seems to me once there's ambiguity, you can submit it to the jury. Well, Your Honor, I would submit that under Missouri law, if an interpretation is illogical or absurd, then it will not support a finding of ambiguity that a contract is ambiguous, a contract is only ambiguous if there are multiple reasonable interpretations. So you're saying Judge Estraza's first impression was absurd? Is that? No, Your Honor. I didn't think so. But, I mean, in all seriousness, you think that's just unreflection outside the pale, that sort of interpretation? Why is that? Yeah. So to illustrate what we would call the absurdity of this argument, Hoffman Bros. pointed to the non-solicitation clause, which is in the same contract provision. And we raised this at summary judgment and at trial. But the non-solicitation clause restricted Tom from soliciting Hoffman Bros. customers for a period of two years. So the reasonable implication is that when two years expires, he can solicit Hoffman Bros. customers. But it would be, by applying Tom's interpretation, upon the expiration of that two-year period, he could solicit them in any way he wanted, even if he did so unlawfully. For example, by stating, by soliciting them, by saying falsely that Hoffman Bros. was installing stolen HVAC parts. So if Hoffman Bros. brought a defamation claim, for example, under those circumstances, no Missouri court would allow the expiration of that non-solicitation clause to be a defense. There's a very important difference, which is when you can't waive breaking the law, like the other party can't waive that. Here, Hoffman Bros. can waive their trademark rights, which is why there's a contractual consent defense in the first place. And that's a very big difference between the two that makes one absurd and, I think, the other one not absurd. And, Your Honor, we would submit that under Missouri law, a waiver has to be intentional or express. And here, all this agreement did was create an absolute ban over and above trademark law to using the name Hoffman for four years. And then that expired. That is all. And the expiration of that restriction doesn't affirmatively provide any rights or provide a license to use the Hoffman name or provide coexistence terms where the parties can use similar marks and avoid confusion by outlining the boundaries of how the parties can use the marks. That's simply not a reasonable way to read the agreement. And so we've cited several coexistence agreement cases to explain that coexistence agreements are an entirely different species of contract. And no mark was referred to at all in this agreement. This agreement was designed to help aid the transition of Tom from Hoffman Bros. And so the trade name clause isn't just a restriction on using the name Hoffman. It's also allowing Hoffman Bros. to use Tom's name, image, and likeness for a period of one year after the expiration of the agreement. Again, recognizing that the parties were transitioning away from each other. And that is why we believe that the court erred in finding that the agreement was ambiguous and submitting the agreement or the interpretation of the agreement to the jury. Defendants were allowed to present this contractual consent defense throughout the case. Jurors were told an opening statement and closing arguments and in the instructions that if plaintiff agreed Tom could use Hoffman in a company name, that was dispositive of plaintiff's trademark and unfair competition claims and no factors relevant to likelihood of confusion analysis applied or mattered. So as a matter of law, for the reasons I've outlined, that is not a reasonable interpretation of the contract language. For some Missouri cases, we cite for the proposition of a waiver and what can reasonably be implied or inferred from a contract, we cite to the T&T case, the Tribus case, the STL Riverview case. And we believe that these cases demonstrate that this is not a reasonable interpretation of the contract language. And so no issue of fact existed as to the ambiguity of the contract, as to whether the contract was ambiguous. Merely because Tom was no longer precluded from using his surname does not mean he's entitled to infringe or compete unfairly. And we believe this interpretation is not supported by the plain language of the settlement agreement. And that plaintiff is entitled to a new trial to allow the jury to fairly decide Hoffman Brothers' claims under the applicable likelihood of confusion analysis without the shadow of the contractual consent defense. Turning to the second issue that I'd like to address this morning, the initial interest confusion instruction. The jury was constrained from conducting a proper likelihood of confusion analysis because of the court's instruction on initial interest confusion. By requiring the jury to find customers unsophisticated before they could consider likelihood of confusion at the initial point of sale, the court improperly cabined the jury's analysis and imposed an inflexible precondition, which is at odds to the fundamental nature of the likelihood of confusion analysis, which is designed to be flexible because every trademark claim is different. The context and circumstances of every claim is different. So the legal test for deciding whether there's a likelihood of confusion has to account for all of those differences as well as the competing interests that are at play in any trademark or unfair competition claim. That may seem rather regimented, but I'm not seeing why it is inconsistent with select comfort, and therefore it doesn't fairly and adequately explain the law to the jury. Our position would be that the instruction placed an improper focus or weight on when the confusion occurred, which is what select comfort was concerned with. When the jury was instructed that they could only consider confusion that occurred at the point of sale, select comfort reversed, finding that that decision on summary judgment was improper, but also the jury instruction that limited the analysis to when the confusion occurred was improper. So we would submit that the same circumstances exist here. There was improper focus or weight on when the confusion occurred in the purchasing process, and that's especially important and prejudicial here where Hoffman Brothers submitted multiple instances of confused customers whose confusion may have been resolved by the time they paid the invoice. They realized that, oh, this isn't Hoffman Brothers, that I intended to repair my HVAC equipment. Let me ask you this. To Judge Graza's question, if we actually think that this is a hyper-technical reading of select comfort, but a plausible one, so it's a plausible reading of it, under abuse of discretion standard or view, can we or should we reverse? And again, I'm asking you to make those assumptions. Okay. And I appreciate that because we would contest some of the premises, but I think even under an abuse of discretion standard, it would warrant reversal because, again, when there is a close question, I think we cite a case in our reply brief that when there is a close question, anything in the instruction that might mislead the jury is even more prejudicial because it can have an outsized impact on how the jury considered and deliberated in evaluating the evidence. And here, again, where we had a dozen customers testify at trial, evidence of more than 30 other customers who experienced similar instances of confusion, and many of these events occurred because of the pay-per-click ad scheme, which is really textbook initial interest confusion where there are diverted opportunities for sales. Even though those customers' confusion may have been resolved before the sale was completed, we still think that it's extremely probative of whether there was a likelihood of confusion. Does it matter, though, and I don't know which way this cuts, but does it matter, though, that the average, and maybe this is in the record, that the average AC consumer on the residential side is not sophisticated? I don't consider myself a sophisticated AC consumer. When they come in and tell me you need this, that, and the other thing, and the capacitors and this and the other thing, I have no idea what they're talking about. And so does that make a difference here, that maybe the jury could have just disregarded the sophistication requirement because it really doesn't apply to a residential consumer? I think it does make a difference, Your Honor, because the jury was instructed when they were given the factors to consider, they were instructed that a sophisticated customer is someone, a customer may be sophisticated if the service they are purchasing is expensive. And there was evidence that HVAC systems can cost thousands of dollars if you're getting a replacement. Even a service is a couple of hundred dollars. And so we think under the facts that that put, again, improper weight on when the confusion occurred and that the jury was never instructed that, or that the question of customer sophistication was left to the jury to decide. Can I just ask you what the attorney fees, because I actually think that's really significant. I know you're running out of time, but I just want to ask, is there a requirement on the attorney fees that it be Robert or what do you do with the fact that, I guess another way is that Hoffman Brothers paid the attorney fees. What is the significance of that? Our position is that it is irrelevant who paid the fees. They were Robert's fees. They were incurred to defend claims against him. Even if there were no other counterclaim defendants, the same fees would have been incurred because of all of the claims were pointed at Robert. And so... Does it come down to a proof problem, though? If I've been awarded attorney's fees, I still need to submit something to the court showing the number. And if I have, if the number's zero because I didn't pay any, it's really more of a proof problem. We would submit that... Appendix page 4-515 provides a declaration that shows the language from Robert's engagement letter explaining that he is responsible for payment of these fees if they're not otherwise paid. We would point to the cases that we've cited in our brief that... Was that submitted to the court? Yes. On appendix 4-515. We would also point to the cases that talk about an employer paying an employee's attorney's fees, for example, and that not being a bar to recovery for... Why didn't he just have the payment reversed from the company so that he had a debt and submit the bill? That's a great question. I think under the analysis that applies to the interpretation of a contract, which is that the prevailing party is entitled to its fees, it ultimately doesn't matter who paid the fees, but they were incurred on Robert's behalf to defend against claims brought against him. And many claims, might I add. So, thank you very much. Mr. Miller. Thank you, Your Honor. May it please the Court, my name is Jay Miller, representing Hoffman Air Conditioning, Thomas Hoffman, and I was one of the trial counsel in this case. Let me start with the first issue. And we haven't discussed the waiver issue. And I would submit, Your Honor, that the argument even today, by counsel to this Court, was not the argument that was raised at the motion for judgment on law, as a matter of law, at the court, at the district court level. This is a new argument that is being raised now. If you look at the appellee's appendix at page 3188-89, has the section of the argument regarding judgment as a matter of law, that plaintiffs at that time raised with Judge Pitlick. And in that, although they say the word contractual consent, they give the exact reasons why they believe it should not be provided. And the reasons they give, along with latches and acquiescence, is as follows. They say to prove these defenses. They say that defendant had to prove that Hoffman Brothers had to actively consent through affirmative conduct. And they claim the only active evidence that was shown was a couple of emails regarding them working together. That the defendant and the company changed their position in reliance on that affirmative conduct. And that the delay in bringing the complaint was excusable. We would have to prove it was not excusable. And they argued those three things were not proven. And therefore, this defense should not go to the jury. There is not a hint in the argument that the reason it should not go to jury is because it was based on an unreasonable or implausible explanation. And in fact, that is what they argue now in their complaint, or in their appellate brief at 44. They say the contractual consent defense should not have been submitted to the jury because it is based on an unreasonable interpretation of the argument. That's not what they argued below. And in fact, when the court found that the, when we made a motion, when the defense made a motion early on, motion for summary judgment, tried to have the district court find that the contract was not ambiguous in our favor, they took the different approach and said, no, it is ambiguous. It should, and it needs to go to the jury. So this entire issue should not be in front of this court at this time. Now, if the court were to reach this issue, I want to say a couple things about what was just raised by the court at opposing counsel. It's exactly right, as the court notes, that if it is a plausible or potentially reasonable interpretation, then it's fine for the jury to hear it. And as Your Honor's own observation brings to light, this was not an absurd or implausible interpretation that either side brought before the jury. We're dealing with contractual consent defense here. And if there was contractual consent, then Tom Hoffman could use the name as long as it was within the scope of the consent. Plaintiffs are now here, or appellants are now here, arguing that, well, he used it, but he used it in ways that were infringing, and we didn't agree to that. Well, again, that should have been the argument below. Neither in the trial nor in the argument to the district court did the plaintiffs ever take the position that, yes, he could use the name Hoffman, but our consent was bound by this. He was not allowed to use the search terms in the internet. He was not allowed to use Hoffman Air Conditioning and Heating because it sounds too much like Hoffman Brothers Heating. There was no hint that, yes, there was an agreement that he would use this, but this went beyond the agreement. So again, we're dealing with issues here that were never raised in this way below. And as the court is aware, this court has ruled many times that in order to have an issue appropriately before this court, it has to be clearly presented to the district court so the district court can make the proper rule. Isn't this more an issue of forfeiture, though? Because you do agree that they asked for JMOL on the contractual consent defense. The grounds were different. Correct. And so usually in those circumstances, we don't say they waived the defense or challenged to the defense. We usually say that they forfeited it. And we have some cases that suggest them were in plain air land, potentially. And I apologize, Your Honor. If forfeiture is the correct term, then yes, I would agree with that. But it's certainly not even plain air or air. Again, it was up to the jury to decide whether there was a consent issue here or not. And there was much debate throughout the course of this trial about what that contract meant, how it was interpreted. There was an email from Robert Hoffman of Hoffman Brothers, one of the plaintiffs, in which he acknowledges that Tom Hoffman could use the name Hoffman after four years. He says it right in there, and it's referred to. I don't have the page number in front of me, but it's referred to in our brief, where he acknowledges after trying to go to the Secretary of State to say he can't use it, he acknowledges in the email, no, he can. Under the contract, he could use it. So it's clearly not plain air to leave this issue in front of the jury. And I would submit that the court gave exactly the right argument in this particular case. Let me jump quickly to the second issue regarding initial confusion. What plaintiffs and what appellants are trying to do here is merge two things together. The six elements of likelihood confusion are separate and apart from what the plaintiff would have to show to get rid of the initial, or to use the initial interest confusion. Initial interest confusion has to do with temporal issues. When is the confusion potentially relevant for the jury to determine? If you don't have initial interest confusion, then the confusion has to be at the time of the purchase. If you're allowed to have the initial interest confusion, then the confusion can either be at the time of the purchase or when there was initial interest shows. So it's a temporal decision, temporal issue. That's why you can't take the initial interest and just merge it right into the likelihood of confusion elements. It's two different things that we're talking about here. And as far as the interpretation of select comfort here, the select comfort court was very, very clear in its discussion of this particular issue. And it said, and this is at page 936 of select comfort, it says, and I quote, of course, as per sentient, the theory of initial interest confusion cannot apply in our circuit where the relevant average consumers are sophisticated at the level of the careful professional purchasers who are at issue with sentient. So the court of this case followed select comfort and sentient to a letter. They even used the definition word for word that sentient had. I agree with your honor, quite frankly, personally, as trial counsel of this case, I find it highly unlikely that the jury found that these consumers were sophisticated. In fact, one can go through the closing argument that I made in that case, and the word sophisticated consumer never once comes out of my mouth in the closing argument. That doesn't mean it wasn't appropriate to put it in front of the jury. It was a jury issue properly, and it was properly ordered by or instructed by the court. I do want to take one issue with something that counsel said in her argument. She said that the jury at one point was instructed that they could be sophisticated consumers because the items were expensive. That was not part of the instruction at all, and the court has the instruction in front of it. The only definition of sophistication in the instruction itself were the exact words out of sentient. So again, your honors, unless there are further questions on that, I'll move on to the attorney's fees issue. Here's the problem, I think, with the clause here. Well, there are two issues actually. The contract in this case says that the party is entitled, party with a capital P, is entitled to its attorney's fees. Two problems. Number one, there are no its attorney's fees here, and I'm not even basing this on the fact that Robert Hoffman didn't pay anything. He was not invoiced for anything. There are invoices attached to the appendix, and every single invoice was sent to Hoffman Brothers. Robert Hoffman himself had no attorney's fees. This is not a situation where there is a scrap of paper that shows that, well, these are really Robert's attorney's fees, but Hoffman Brothers is either forever or for now or for the time being going to pay for them. Why isn't that just an internal accounting issue? Well, it's not an internal accounting issue, Your Honor, because of the second issue. The capital P party in this case and the lower P party in this case was a big deal. This was raised by plaintiffs. It's used in two different ways in the settlement agreement. There are some parties that are called a capital P and there are other parties lower case P. Robert Hoffman was a capital P, Hoffman Brothers was a lower case P, and this was raised by plaintiffs, not by us. We were taking the position that it was a typo and they all should be treated the same. Plaintiffs brought a partial motion for summary judgment because Tom Hoffman brought claims for breach of contract against Hoffman Brothers as a party to the contract. They brought a motion for partial summary judgment saying, listen, Hoffman Brothers is not listed under the definition with a capital P, and therefore they are not bound by this contract in that way. They can't be sued for breach. The district court agreed with them, and in fact the district court in making its ruling in footnote number 25, which I believe is page 29 of the court's ruling, specifically says Hoffman Brothers, if they were to win on their breach of contract claim, they cannot be awarded attorney's fees. So the reason it's not simply an accounting thing here is, honestly what's being done here from our perspective is, Hoffman Brothers is now trying to get around the very definition and the very limitation that they themselves asked the district court to make when dividing up party from a lower case P with party from an upper case P. Well, I'm not sure I agree with the last issue, Your Honor. Let me be clear about what my point is. That statement by the district court was made initially in the footnote of the court's granting of their partial summary judgment motion. The Judge Pitlick then referred back to that in her denying their motion for attorney's fees. So I hope that answers your  I think what he's asking is, is it like an equitable estoppel? You cannot make that argument at all because you've already made an argument on another issue to the contrary. It's more like I've already ruled on this and therefore I'm going to rely on my prior ruling. I don't think Judge Pitlick, I don't think I can fairly say Judge Pitlick put it that way. I think that's appropriate. I think that's an appropriate way to look at it personally, but I don't think that Judge Pitlick laid it out like that. So I'm not so sure all of this actually matters. I went down the same rabbit hole you did. The it's could refer to Hoffman Brothers. Oh wait, the it's can't refer to Hoffman Brothers because they're not capital P party. For some reason Hoffman Heating and Cooling is, but Hoffman Brothers is not. Might have been a typo, but whatever. But then we have cases from other circuits. I don't think we've ever addressed this, but like there's a Seventh Circuit case written by Judge Sykes that basically says where you have one of these provisions, we basically can assume because the individual party named in the agreement was the one who was supposed to pay the attorney fees, even if somebody else paid for them, not in the agreement, they were in still incurred by this party and therefore we're going to award attorney fees. Well the word incurred, and they, they emphasize this in their brief, the word incurred is not in this settlement agreement. And I would submit that the word incurred actually broadens for that very reason that your honor just said. It broadens the scope of what could be obtained. Here it's, it's attorney's fees. It's, if that was the approach that, that the parties wanted to take, your honor, what I would submit, and Judge Pitlick made reference to this sort of thing, the language of the settlement agreement could have been incurred. The language of the settlement agreement could have been that Mr. Hoffman is entitled to any, any attorney's fees, any attorney's fees that are incurred. The, it could have said Mr. Hoffman is entitled to receive attorney's fees that are paid for by anybody in order to assist in his defense. There's a whole host of ways that could have been said in the settlement agreement. It wasn't. And again, going back to I hate to beat a dead horse, but going back to the capital P versus lower P issue, it's clear this was done with thought. That's certainly what Judge Pitlick found in making that distinction. I see my time is up. Unless the court has any further questions, I thank you for your time. Thank you, counsel. Ms. Kinn, do we use all of your rebuttal times? I'll give you two minutes. All right. Really quick, I just want to address the waiver issue that counsel raised. I'll just respond by saying the district court was presented with the very same arguments we are making on appeal now at summary judgment. That's at appendix 2-420. We moved for judgment as a matter of law on the contractual consent defense. And importantly, at summary judgment, the court found as a legal question that the contract was ambiguous, and that is a ruling that the parties had to live with in preparing for trial. But we nevertheless moved for judgment as a matter of law on the contractual consent defense in our 50A motion. The court considered both parties' 50A motions on whether the contractual consent defense should apply, and overruled both of them, again, repeating her analysis from summary judgment by saying that the contract is ambiguous. And then, importantly, defendants argued in opposition to our renewed 50A motion, our 50B motion, and motion for new trial, that we had waived this argument. But the court didn't agree with that proposition in her ruling on the motion for new trial. She stated at, this is at addendum page 64, and addendum page 66, when plaintiff moved at trial to exclude defendants' contractual consent defense after hearing from both sides, the court denied the motion, and she discusses the ambiguity. So I would submit that there can be no doubt that the court considered these issues and ruled on them at trial, and that Hoffman Brothers asked the court to find that the agreement couldn't be interpreted in the way that defendants presented it at trial. In terms of the instruction, I just want to point out that you can see in appendix 3-118, the instruction language on initial interest confusion does instruct the jury that in considering this factor, meaning the sophistication of purchasers, you may consider costs and conditions of purchase. And so I would just submit that there is language in the instruction that allows the jury to consider that. And so for all of these reasons, we would respectfully request the court remand for a new trial. Thank you. Thank you, counsel. Does that conclude the docket for today? It does. The case is submitted, and the court will take the matter under advisement and issue an opinion in due course. The court will be in recess until tomorrow morning.